Mathew K. Higbee, Esq., SBN 241380
Ryan E. Carreon, Esq., SBN 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8336
(714) 597-6559 facsimile
Email: mhigbee@higbeeassociates.com
rcarreon@higbeeassociates.com

*Attorney for Plaintiff,*
ADLIFE MARKETING &
COMMUNICATIONS CO. INC.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADLIFE MARKETING & COMMUNICATIONS CO. INC., <br><br> Plaintiff, <br><br> v. <br><br> JETRO CASH & CARRY ENTERPRISES LLC; JETRO HOLDINGS, LLC; RESTAURANT DEPOT, LLC; and DOES 1 through 10 inclusive. <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, Adlife Marketing & Communications Co., Inc. ("Adlife" or "Plaintiff"), complains against Jetro Cash & Carry Enterprises, LLC, Jetro Holdings, LLC, Restaurant Depot, LLC, and DOES 1 through 10, inclusive (collectively "Jetro" or "Defendant") as follows:

**JURISDICTION AND VENUE**

1. This is a civil action seeking damages and injunctive relief against Defendant for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* and breach of contract.

2. This Court has subject matter jurisdiction under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.*, 28 U.S.C. § 1331 (federal question), and 28

U.S.C. §§ 1338(a) (copyright).

3. Additionally, this Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is a diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000. Plaintiff is a corporation organized under the laws of the State of Rhode Island with corporate headquarters in Rhode Island. Upon information and belief, Defendant is a corporate entity organized under the laws of the state of Delaware with corporate headquarters in New York. The matter in controversy, exclusive of interest and costs, exceeds $75,000.

4. Personal jurisdiction exists over Defendant because Defendant is physically present in California, with a business office located at 1265 N. Kraemer Blvd. Anaheim, CA 92806. Additionally, Defendant directed its infringing conduct towards California citizens and has wrongfully caused Plaintiff injury in the state of California.

5. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant resides and has a place of business in this judicial district, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant caused injury to Plaintiff in this judicial district.

## PARTIES

6. Plaintiff Adlife Marketing & Communications Co. Inc. ("Adlife") is a Rhode Island corporation with its principal place of business in Pawtucket, Rhode Island.

7. On information and belief, Defendant Jetro Cash & Carry Enterprises, LLC is a Delaware limited liability company headquartered in College Point, New York.

8. On information and belief, Defendant Jetro Holdings, LLC is a Delaware limited liability company headquartered in College Point, New York.

9. On information and belief, Restaurant Depot, LLC is a Delaware

1 limited liability company headquartered in College Point, New York.

2     10.    On information and belief, Jetro Holdings, LLC and Restaurant Depot, LLC are wholly owned subsidiaries of Jetro Cash & Carry Enterprises, LLC.

    11.    Jetro Cash & Carry Enterprises, LLC, Jetro Holdings, LLC, and Restaurant Depot, LLC will be collectively referred to as "Jetro" or "Defendant."

    12.    Plaintiff is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and for that reason, sues such Defendants under such fictitious names. Plaintiff is informed and believes and on that basis alleges that such fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by the conduct of said Defendants. Plaintiff will seek to amend the complaint when the names and capacities of such fictitiously named Defendants are ascertained. As alleged herein, "Defendant" shall mean all named Defendants and all fictitiously named Defendants.

## STATEMENT OF FACTS

### *Adlife and the Photographs Forming the Subject Matter of This Complaint*

    13.    Adlife is an advertising and marketing agency whose team of seasoned professionals has, for decades, provided elite branding services to its clientele. With its innovative marketing campaigns and its production of high quality printed pieces such as retail circulars, signage, pamphlets and more, Adlife enables its clients to build a brand through compelling visual arrangements.

    14.    For decades, Adlife has created, artistically arranged and professionally produced a library of still images of food and other grocery items. Adlife's library now consists of approximately 30,000 photos. The photographs are high-resolution, artistically rendered with pleasing angles and selective lighting, color-corrected and color-separated, which makes them particularly valuable as, when used together, they provide color consistency.

    15.    For valuable consideration, Adlife has licensed the rights to reproduce,

distribute and publicly display its copyrighted photographs, or derivative versions thereof, to other advertising agencies and retailers.

16. Adlife is the holder of all rights, title and interests in and to said food photographs, which form the subject matter of this dispute (the "Copyrighted Food Photographs").

17. Adlife has registered these Copyrighted Food Photographs with the United States Copyright Office, and the registrations have been accepted and registration certificates issued to Adlife.

### *Defendant Jetro*

18. Defendant Jetro operates a series of membership based wholesale cash and carry foodservice supplier warehouses in various regions of the United States.

19. Operating under the "Jetro Cash and Carry" and "Restaurant Depo" banners, Jetro offers a broad selection of products for caterers, independent restaurants, non-profits, small businesses and more.

20. In order to advertise these and other food products, Jetro distributes regular print and digital circulars to thousands of households.

21. Jetro's print circulars consist primarily of prominently displayed food images accompanied with name and pricing information. In addition to its print circular, Jetro also distributes digital versions of each circular online. *See* https://www.restaurantdepot.com/jetro/view-regional-flyers.

22. According to a 2017 Nielsen Homescan study, about 80% of U.S. households still use circulars and other traditional, printed sources for information about retail store products and offerings. Attached hereto as Exhibit A is a true and correct news article from Nielsen Homescan explaining the results of its study.

### *Adlife's Distribution of its Copyrighted Food Photographs*

23. Adlife currently offers its entire library of Copyrighted Food Photographs for licensing through a monthly subscription service to its website www.PreparedFoodPhotos.com.

24. Subscribers to www.PreparedFoodPhotos.com pay a negotiated rate for access to Adlife's library. A current subscription to Adlife's library through www.PreparedFoodPhotos.com would cost between $999 and $5,000 per month depending upon a variety of factors including, among other factors, the number of locations supported by each subscriber.

25. Adlife does not currently license its Copyrighted Food Photographs by any other means.

26. Subscribers who wish to purchase a subscription to www.PreparedFoodPhotos.com typically enter into a formal "End-User Subscription Agreement" which is negotiated between Adlife and the subscriber, and which sets forth the agreed upon terms for which the subscriber will be able to access and use Adlife's Copyrighted Food Photographs.

27. Each "End-User Subscription Agreement" provides a set term for each subscription, typically one year, and provides a mechanism for the subscriber to renew the subscription term or cancel the subscription.

28. Additionally, each "End-User Subscription Agreement" expressly states that the subscriber must immediately cease all use of the Copyrighted Food Photographs upon the expiration or termination of the subscription term, and also provides for set monetary penalties for unauthorized use of Adlife's Copyrighted Food Photographs.

***Jetro's Willful Infringement of Adlife's Copyrighted Food Photographs***

29. On or about March 13, 2017, Jetro entered into a formal "End-User Subscription Agreement" ("License Agreement") with Adlife to be able to access and use Adlife's Copyrighted Food Photographs.

30. Prior to executing the License Agreement, Jetro added in hand-written notations and crossed out various provisions, indicating that Jetro had reviewed and was aware of each of the provisions of the License Agreement.

31. Adlife accepted these handwritten changes made by Jetro, and the

parties executed the License Agreement.

32. Jetro's executed License Agreement with Adlife contained the following relevant provisions:

> Adlife has developed and maintains an Internet based subscription program allowing subscribers full access to stock photography on the website for the specific purposes of advertising subject to the conditions in this Agreement (the "Services") …
> …
>
> 1. **License Grant**
>
>   a) **License to Use Services.** Adlife hereby grants to Subscriber a nonexclusive, nontransferable, license during the Term (the "License") to access and use the Services in accordance with this Agreement. …
>
>   …UPON TERMINATION OF THIS AGREEMENT, SUBSCRIBER AND ITS END-USERS SHALL IMMEDIATELY CEASE USE OF ANY AND ALL ADLIFE IMAGES …
>   …
>
> 4. **Term, Suspension, and Termination.**
>
>   a) **Term.** Unless terminated earlier pursuant to this Section 5 of this Agreement, the initial term ("Initial Term") of this Agreement shall be for a period of twelve (12) months from the Effective Date. Upon expiration of the term, the agreement shall continue month to month until cancelled or extended by either party. …
>   …
>
> 5. **Fees and Payment.**
>
>   a) **Subscription Fees**. … Subscriber retains the right to cancel the service after a change in price with 30 day notice. …
>   …
>
>   e) **Excluivse, Unlicensed, and Prohibited Use.** … Any unlicensed or prohibited use of any Adlife photography will carry with it a minimum penalty of at least $8,000 per image, per medium/channel of use.
>
> 6. **Amendments.** … Subscriber retains the right to cancel the service if it changes with 30 days notice.

33. Attached as Exhibit B is a true and correct copy of the License Agreement between Jetro and Adlife.

34. After the initial one year term the License Agreement expired in March of 2017, the License Agreement continued month to month per the handwritten term added by Jetro to paragraph 4(a).

35. On August 24, 2018, Ray Carrier, account director at Adlife, sent an

email to Fran Moreira, the senior creative director at Jetro. In the email Carrier requested to set a call to discuss a potential price increase to Jetro's subscription.

36. Moreira responded and inquired as to the price Jetro was currently paying for its subscription and the amount of the proposed increase, which Carrier provided.

37. On September 19, 2018, Carrier sent a follow up email stating that he had not heard back from Moreira regarding the proposed price increase, and that Adlife had agreed to hold off on the proposed increase for the month of September, but could not hold off beginning in October.

38. That same day Moreira responded stating that Jetro wanted to cancel its subscription.

39. Attached hereto as Exhibit C is a true and correct copy of the email exchange between Moreira and Carrier.

40. The term of the License Agreement subsequently expired effective March 1, 2019.

41. Under the express terms of the License Agreement, Jetro was to immediately cease use of Adlife's Copyrighted Food Photographs upon expiration of the term of the License Agreement.

42. In April of 2019, Adlife began to discover that Jetro had continued to use a number of Adlife's Copyrighted Food Photographs in its print and online circulars despite the term of the License Agreement with Adlife having expired a month prior.

43. As of the date of this Complaint, Adlife has identified 64[1] of its Copyrighted Food Photographs appearing in Jetro circulars dated after the term of the License Agreement had expired for a total of 464 separate uses in both print and online media.

---

[1] Adlife has identified 18 Copyrighted Food Photos used in Jetro Cash & Carry branded store circulars and 49 Copyrighted Food Photos used in Restaurant Depo branded store circulars, with 3 of the Copyrighted Food Photos being used in both Jetro and Restaurant Depo circulars.

Complaint For Damages
And Injunctive Relief

44. Attached hereto as Exhibit D is a spreadsheet containing information about the Copyrighted Food Photographs at issue.

45. Attached hereto as Exhibit E are true and correct records of an infringement audit performed by Adlife showing Jetro's infringing use of Adlife's Copyrighted Food Photographs.

46. Such use of the Copyrighted Food Photographs after the expiration of the term of Jetro's License Agreement is not authorized by Adlife and is in express breach of the License Agreement.

47. Per paragraph 5(e) of the License Agreement, Jetro has agreed that its unauthorized usage of Adlife's Copyrighted Food Photographs carries with it a minimum penalty of at least $8,000 per image, per medium or channel of use.

48. Based on the fact that Jetro voluntarily cancelled its subscription under the License Agreement with knowledge that it was obligated to immediately cease all use of Adlife's Copyrighted Food Photographs, its continued use of Adlife's Copyrighted Food Photographs is knowing and willful.

49. On information and belief, Jetro has continued to use additional Copyrighted Food Photographs that have yet to be identified by Adlife. Adlife will amend its complaint once the totality of Jetro's infringing actions are ascertained.

50. Jetro's use of the Copyrighted Food Photographs for advertising and promotional purposes is irrepressibly commercial.

51. Said use has and continues to generate revenue for Jetro by luring clientele with high-quality food stills, thereby increasing demand for Jetro's retail products.

**FIRST CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT**
**17 U.S.C. § 101 *et seq.***
**Against All Defendants**

52. Adlife incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

53. Adlife is the owner of all rights, title, and interest in the copyrights to

the Copyrighted Food Photographs, which are original works of authorship subject to copyright protection under the laws of the United States.

54. Adlife's Copyrighted Food Photographs have been registered with the United States Copyright Office and perfected registration certificates have been issued.

55. Jetro has directly, vicariously, contributorily and/or by inducement willfully infringed Adlife's copyrights by reproducing, displaying, distributing, and utilizing the Copyrighted Food Photographs for purposes of trade in violation of 17 U.S.C. § 501 *et seq.* knowing that its License Agreement had expired.

56. Jetro has willfully infringed, and unless enjoined, will continue to infringe Adlife's copyrights by knowingly reproducing, displaying, distributing, and utilizing the Photographs for purposes of trade.

57. All Jetro's acts are and were performed without Adlife's permission, license, or consent.

58. Adlife has identified at least 464 instances of infringement on at least 64 of its Copyrighted Food Photographs by way of unlawful reproduction and display.

59. On information and belief, Jetro has further infringed in materials not yet available to Plaintiff due to the absence of discovery. If and when other infringements are determined and discovered in this case, Adlife expressly reserves the right to amend the pleadings to include additional acts of infringement as needed.

60. The said wrongful acts of Jetro have caused, and are causing, great injury to Adlife, which damage cannot be accurately computed, and unless this Court restrains Jetro from further commission of said acts, it will suffer irreparable injury, for all of which it is without an adequate remedy at law.

61. Accordingly, Adlife seeks a declaration that Jetro is infringing its copyrights and an order under 17 U.S.C. § 502 enjoining Jetro from any further infringement of its copyrights.

62.  As a result of Jetro's violations of Title 17 of the U.S. Code, Adlife is entitled to recover damages in the form of any actual damages and disgorgement of profits pursuant to 17 U.S.C. §504(b), or statutory damages in an amount up to $150,000.00 per infringement pursuant to 17 U.S.C. § 504(c).

63.  As a result of Jetro's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C § 505 from Jetro.

64.  Adlife is also entitled to injunctive relief to prevent or restrain infringement of its copyright pursuant to 17 U.S.C. § 502.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT**
**Against all Defendants**

65.  Adlife incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

66.  Adlife and Jetro are parties to the License Agreement.

67.  Adlife fully performed its obligations under the License Agreement.

68.  As part of the License Agreement, Jetro agreed that it would immediately cease using Adlife's Copyrighted Food Photographs once the term of the License Agreement expired.

69.  Jetro breached the License Agreement by, among other things, continuing to use Adlife's Copyrighted Food Photographs despite the fact that the term of the License Agreement had expired.

70.  Adlife has been damaged by Jetro's breach in an amount to be proven, but not less than the contractually agreed upon amount of $8,000 per image per medium or channel of use.

**PRAYER FOR RELIEF**

WHEREFORE, Adlife requests judgment against Jetro as follows:

1.  Jetro and its officers, agents, servants, employees, and representatives, and all persons in active concert or participation with Jetro be permanently enjoined

10                                                                        Complaint For Damages
                                                                               And Injunctive Relief

Case 8:19-cv-01053-JLS-JDE   Document 1   Filed 05/30/19   Page 11 of 13   Page ID #:11

from copying, reproducing, displaying, promoting, advertising, distributing, or selling, or any other form of dealing or transaction in, any and all Copyrighted Food Photographs of Adlife;

2. The Court enter a seizure order directing the U.S. Marshal to seize and impound all items possessed, owned or under the control of Jetro, their officers, agents, servants, employees, representatives and attorneys, and all persons in active concert or participation with them, which infringe upon Adlife's copyrights, including but not limited to any and all broadcasting materials, advertising materials, print media, signs, Internet web sites, domain names, computer hard drives, servers or any other media, either now known or hereafter devised, bearing any image which infringes, contributorily infringe, or vicariously infringes upon Adlife's copyrights in the Copyrighted Food Photographs as well as all business records related thereto, including, but not limited to, lists of advertisers, clients, customers, viewers, distributors, invoices, catalogs, and the like;

3. An accounting be made for all profits, income, receipts or other benefit derived by Jetro from the unlawful reproduction, copying, display, promotion, distribution, or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringes upon Plaintiff's copyrights pursuant to 17 U.S.C. §§ 504 (a)(1) & (b);

4. Actual damages and disgorgement of all profits derived by Jetro from its acts of copyright infringement to reimburse Adlife for all damages suffered by it by reasons of Defendant's acts, under 17 U.S.C. §§ 504 (a)(1), or in the alternative and at Adlife's election, statutory damages for copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§ 504(a)(2) and (c);

5. Reasonable attorneys' fees incurred herein pursuant to 17 U.S.C. § 505 or otherwise available by law;

6. Costs and interest pursuant to 17 U.S.C. §§ 504 (a)(1) and (b), 17 U.S.C. § 505, or otherwise available by law;

7. Compensatory damages for breach of contract in an mount to be proven but not less than the contractually agreed upon amount of $8,000 per image per medium or channel of use;

8. Prejudgment interest to Adlife on all amounts owed; and

9. Any such other and further relief as the Court may deem just and appropriate.

Dated: May 30, 2019                         Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile
*Counsel for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff, Adlife Marketing & Communications Co., Inc., hereby demands a trial by jury in the above matter.

Dated: May 30, 2019

Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile
*Counsel for Plaintiff*