Mathew K. Higbee, Esq., SBN 241380
Ryan E. Carreon, Esq., SBN 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8336
(714) 597-6559 facsimile
Email: mhigbee@higbeeassociates.com
rcarreon@higbeeassociates.com

*Attorney for Plaintiff,*
ADLIFE MARKETING & COMMUNIATIONS CO. INC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADLIFE MARKETING & COMMUNIATIONS CO. INC., | Case No. 8:19-cv-01053-JLS-JDE |
| Plaintiff, | *Hon. Josephine L. Staton* |
| v. | **NOTICE OF MOTION AND MOTION TO DISMISS THE COUNTERCLAIMS** |
| JETRO CASH & CARRY ENTERPRISES LLC; JETRO HOLDINGS, LLC; RESTAURANT DEPOT, LLC; and DOES 1 through 10 inclusive. | **Courtroom: 10A – 10th Floor** |
| | **Hearing Time: 10:30 a.m.** |
| Defendants. | **Hearing Date: Dec. 13, 2019** |
| | Complaint Filed: May 30, 2019 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 13, 2019 at 10:30 A.M., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Josephine L. Staton of the above-titled court, located at the Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Santa Ana, CA, 92701, Courtroom 10A, 10th Floor, Plaintiff Adlife Marketing & Communications Co., Inc. ("Adlife") will move to dismiss the counterclaims asserted by Defendants Jetro Cash & Carry Enterprises, LLC, Jetro Holdings, LLC and Restaurant Depot, LLC ("Jetro") pursuant to Federal Rules of Civil Procedure 12(b)(6).

Pursuant to Local Rule 7-3 counsel for the parties met and conferred on September 30, 2019. Declaration of Ryan E. Carreon ("Carreon Decl.") ¶3.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This Motion is brought on the grounds that all of Jetro's counterclaims fail to state a claim upon which relief can be granted and fail the meet the pleading standards of Federal Rules of Civil Procedure 8 and 9.

This Motion is based on this Notice of Motion, the attached memorandum of points and authorities, the declaration of Ryan E. Carreon in support, and the pleadings, files and other materials that are on file with the Court or may be presented at the hearing.

DATED: October 15, 2019                    Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile
*Counsel for Plaintiff*

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  MOTION TO DISMISS STANDARD ................................................................ 2

III. EACH OF JETRO'S COUNTERCLAIMS SHOULD BE DISMISSED ......... 4

    1.   Jetro's Counterclaim For Copyright Invalidity Should Be
        Dismissed For Lack of Plausible Facts. .................................................. 4

    2.   Jetro's Counterclaim For Copyright Non-Infringement Should
        Be Dismissed Because It Is Merely A Mirror Image Of Adlife's
        Claim. ....................................................................................................... 8

    3.   Jetro's Counterclaim For Breach Of Contract Should Be
        Dismissed For Failure To State A Claim. ............................................. 10

    4.   Jetro's Counterclaim For Breach of The Implied Covenant Of
        Good Faith And Fair Dealing Should Be Dismissed. .......................... 12

    5.   Jetro's Counterclaim For Fraud Should Be Dismissed Because It
        Fails To Meet The Heightened Rule 9 Pleading Standard. ................. 15

    6.   Jetro's Counterclaim For Unfair Competition Should Be
        Dismissed For Failure To Meet The Rule 9 Pleading Standard. ........ 16

IV.  CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).........................................................2, 3, 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)................................................3

*Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239 (1903) .........................7, 8

*Boisson v. Banian, Ltd*, 273 F.3d 262, 268 (2d Cir. 2001)........................................6

*Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53 (1884)........................6, 7, 8

*Centerville Builders, Inc. v. Wynne*, 683 A.2d 1340, 1342 (R.I. 1996) .................13

*Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)..............................................................................................................................3

*Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir.1994) ........................................................................................15

*Dovenmuehle Mortgage, Inc. v. Antonelli*, 790 A.2d 1113, 1115 (R.I. 2002)........................................................................................................................13

*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000) ......................8

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ..........................................................................................................................6

*Fram Corp. v. Davis*, 121 R.I. 583, 587-88, 401 A.2d 1269, 1272 (1979) ........................................................................................................................11

*Ide Farm & Stable, Inc. v. Cardi*, 110 R.I. 735, 739, 297 A.2d 643, 645 (1972) ...................................................................................................................13

*In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994)........................16

*Jewelers' Circular Publishing Co. v. Keystone Publishing Co.*, 274 F. 932, 934 (S.D.N.Y. 1921)..............................................................................................7

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) .............................3

*Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 544-545 (2d Cir. 1959) ..................................................................................................................5

*Maverick Recording Co. v. Chowdhury*, 2008 WL 3884350, at *2 (E.D.N.Y. Aug 19, 2008) .....................................................................................................9

*Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) ..........................................3

*Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993).............................................15

*Pagano v. Chas. Beseler Co.*, 234 F. 963, 964 (S.D.N.Y. 1916) .............................8

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)............................................................3

*Perrotta v. Paine*, 1994 R.I. Super. LEXIS 54, at *5 (Super. Ct. May 17, 1994) .......................................................................................... 11

*Poe v. Missing Persons,* 745 F.2d 1238, 1242 (9th Cir. 1984) .................. 5

*Psaty & Fuhrman v. Housing Auth.*, 76 R.I. 87, 68 A.2d 32 (1949)...................... 13

*Reid v. Key Bank of S. Maine, Inc.*, 821 F.2d 9, 14 (1st Cir. 1987) .................. 13

*Rhode Island Charities Trust v. Engelhard Corp.*, 109 F. Supp. 2d 66, 73 (D.R.I. 2000)............................................................................... 13

*Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir. 1992).................................... 8

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 66 F. Supp. 2d 317, 329 (D.R.I. 1999).......................................................................... 13

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989) ........... 5

*Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) ....................... 16

*Sparling v. Daou*, 411 F.3d 1006, 1027 (9th Cir. 2005)......................... 17

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)................................. 3

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)................................................................................ 3, 15, 17

**STATUTES**

17 U.S.C. § 101 ........................................................................................ 5

17 U.S.C. § 102(a) .................................................................................... 5

17 U.S.C. § 201(a) .................................................................................... 4

17 U.S.C. § 408(a) .................................................................................... 5

28 U.S.C. § 2201(a) .................................................................................. 9

Fed. R. Civ. P. 9(b) ................................................................................. 15

U.C.C. § 1-201(b)(20) ............................................................................ 13

**TREATISES**

1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 2.08[E][1] .......................................................................................... 7, 9

17A Am. Jur. 2d Contracts § 380 (1991) ............................................... 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

This is a copyright infringement and breach of contract lawsuit arising from Jetro unauthorized use of Adlife's food images in advertising circulars.

For decades, Adlife has created, artistically arranged and professionally produced a library of still images of food and other grocery items. Adlife's library now consists of approximately 30,000 photos. The photographs are high-resolution, artistically rendered with pleasing angles and selective lighting, color-corrected and color-separated, which makes them particularly valuable as, when used together, they provide color consistency. Complaint ¶14. All of its food images are registered with the United States Copyright Office. Complaint ¶17.

Adlife offers its unique library of food images for license on a subscription basis through its website www.preparedfoodphotos.com. Complaint ¶23.

Jetro operates a series of membership based wholesale cash and carry foodservice supplier warehouses in various regions of the United States under the "Jetro Cash and Carry" and "Restaurant Depot" banners. Complaint ¶¶18-19; Answer ¶¶18-19. In order to advertise its food products, Jetro distributes print and digital circulars containing food images. Complaint ¶¶20-21; Answer ¶21.

On or about March 13, 2017, Adlife and Jetro entered into a license agreement allowing Jetro to access and use Adlife's images. Complaint ¶29; Answer ¶29. Under the terms of the license agreement, Jetro was only authorized to use Adlife's food images during the subscription term. Complaint ¶¶32-33, Exhibit B; Answer ¶32. Once the subscription term expired or was terminated, Jetro was contractually obligated to cease all use of Adlife's food images. *Ibid*. The parties also agreed to a contractual liquidated damages clause setting an agreed upon price of $8,000 per medium/channel of use for each unauthorized use of and Adlife food image. *Ibid*.

Per the terms of the license agreement, Jetro was required to give at least 30

days notice prior to cancelling its subscription. Complaint ¶32. In September of 2018, Jetro notified Adlife in an email that it wished to cancel its subscription. Complaint ¶¶35-38; Answer ¶¶35-38. The subscription subsequently expired on March 1, 2019. Complaint ¶40.

Under the express terms of the subscription agreement, Jetro was to immediately cease all use of Adlife's food images upon expiration of the license term. Complaint ¶41. In April 2019, Adlife began to discover that Jetro was continuing to use Adlife food images in its print and online circulars despite the term of the license agreement with Adlife having expired a month prior. Complaint ¶42. After reviewing Jetro circulars and discovering additional unauthorized uses of its food images, Adlife filed the instant lawsuit on May 30, 2019.

As of the date of the filing of the complaint, Adlife had identified at least 464 instances of unauthorized use of at least 64 of its food images. Complaint ¶43. Since the complaint was filed, Adlife has continued to monitor Jetro's circulars, and has discovered 18 images used by Jetro branded stores in 210 separate print and digital uses, and 66 images used by Restaurant Depot branded stores in 834 separate print and digital uses for a combined total of 1,044 print and digital uses; more than double the original count in the Complaint. Carreon Decl. ¶4.

On August 26, 2019, Jetro filed an Answer and Counterclaims against Adlife. Dkt. #22. After the parties conferred, on September 24, 2019, Jetro filed Amended Counterclaims against Adlife for (1) Copyright Invalidity; (2) Copyright Non-Infringement; (3) Breach of Contract; (4) Breach of Implied Covenant of Good Faith and Fair Dealing; (5) Fraud; and (6) Unfair Competition. Dkt. #24.

Adlife now moves to dismiss the Counterclaims assreted by Jetro.

## II.   MOTION TO DISMISS STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party. *See Daniels-Hall v. National*

*Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a claimant alleges fraudulent conduct as the basis for its claim, the claim is said to be "'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)). A claim is 'grounded in fraud' where its elements include "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996).

In this case, all of Jetro's counterclaims should be dismissed for failure to plausibly state a claim. Counterclaims 1 through 4 do not allege sufficient facts to state a plausible claim for relief, and the barebones facts that are alleged are not

sufficient to state a claim. Likewise, Counterclaims 5 and 6 do not meet the heightened pleading standards of Rule 9, nor do the facts alleged state a claim upon which relief can be granted.

Adlife respectfully requests that Jetro's counterclaims be dismissed.

## III.   EACH OF JETRO'S COUNTERCLAIMS SHOULD BE DISMISSED

### 1.   Jetro's Counterclaim For Copyright Invalidity Should Be Dismissed For Lack of Plausible Facts.

For its First Counterclaim, Jetro alleges that Adlife's copyrights are "invalid, including for non-registration, non-originality, lack of authorship and/or lack of ownership." Furthermore, Jetro alleges that "at least some of the many asserted copyrights are non-original and/or generic images of indistinctive, commonplace items." And that Adlife "lacks valid title to at least some of the many asserted copyrights."

As an initial matter, Jetro's allegations are conclusory and lack any alleged factual basis. *See Iqbal*, 556 U.S. at 678, 686 (the plaintiff must allege facts, not conclusions, from which the defendant's liability plausibly may be inferred). Furthermore, the use of "and/or" makes it difficult for Adlife to understand the basis for Jetro's claim. Are the copyrights invalid because of lack of registration? Non-originality? Lack of authorship? Lack of ownership? Or some combination of those theories? Without precisely identifying the theory on which Jetro basis its claim, Adlife cannot be reasonably expected to defend against what amounts to a moving target.

Even if Jetro's barebones conclusory allegations are taken as true, many of them are not factually plausible. For example invalidity as a result of "non-registration" and "non-originality" cannot be plausibly asserted.

As to invalidity for non-registration, Jetro's claim must fail because registration is not required to hold a valid copyright, and the record shows that Adlife has, in fact, registered the food images at issue. As a general rule copyright vests initially in the author or authors of a work. 17 U.S.C. § 201(a). Copyright

protection subsists from the moment the work is "fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Registration is not a prerequisite to a valid copyright, although it is a prerequisite to suit. 17 U.S.C. § 408(a); *see also S.O.S., Inc. v. Payday, Inc*., 886 F.2d 1081, 1085 (9th Cir. 1989). Because registration is not a prerequisite for copyright validity, Jetro's claim that Adlife's copyrights are invalid because they are not registered is implausible. Regardless, Adlife has attached to its pleading a spreadsheet which shows each of the food images at issue with the corresponding registration number all of which can be verified on the Copyright Office website. *See* Dkt. #1, Exhibit D. Thus, it is implausible for Jetro to assert that the food images at issue are not registered, let alone invalid for lack of registration.

Similarly, Jetro's allegation that Adlife's copyright are invalid because "at least some of the many asserted copyrights are non-original and/or generic images of indistinctive, commonplace items" must also fail.

The subject matter of copyright embodies original works of authorship fixed in any tangible medium of expression from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. 17 U.S.C. § 102(a). Works of authorship include, among other things, pictorial works. § 102(a), (a)(5). Additionally, a work is fixed in a tangible medium of expression when its embodiment in a copy is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of time of more than transitory duration. 17 U.S.C. § 101. Whether a subject matter is copyrightable is a question of law which may be determined on a Motion to Dismiss. *See Poe v. Missing Persons,* 745 F.2d 1238, 1242 (9th Cir. 1984)).

Photographs are generally viewed as creative, aesthetic expressions of a scene or image and have long been the subject of copyright. *See* 17 U.S.C. § 102(a)(5); *see also Kitchens of Sara Lee, Inc. v. Nifty Foods Corp*., 266 F.2d 541, 544-545 (2d Cir. 1959) (finding requisite originality where plaintiff "had put in

time, creative thought and money" into its realistic pictorial representations, made by artists and lithographers, of certain cakes).

"To qualify for copyright protection, a work must be original to the author." *Feist Publications, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 345 (1991). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Ibid.* Originality does not require that the work "must be either novel or unique, it simply means a work independently created by its author, one not copied from pre-existing works, and a work that comes from the exercise of the creative powers of the author's mind, in other words, the fruits of the author's intellectual labor." *Boisson v. Banian, Ltd*, 273 F.3d 262, 268 (2d Cir. 2001) (quotations, citations, and brackets omitted). Thus, "the requisite level of creativity is extremely low," and "[t]he vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Feist,* 499 U.S. at 345.

Jetro's counterclaim contends that Adlife's food photographs are "are non-original and/or generic images of indistinctive, commonplace items" and therefore not subject to copyright. The Supreme Court rejected a similar argument more than 100 years ago. In *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53 (1884), the plaintiff argued a photograph of the author Oscar Wilde was not original and therefore not copyrightable because a "photograph is the mere mechanical reproduction of the physical features or outlines of some object animate or inanimate, and involves no originality of thought or any novelty in the intellectual operation connected with its visible reproduction in shape of a picture." *Id.* at 59. The Court held the Wilde photograph clearly was original because of the creative and intellectual decisions involved in producing it:

> [The court below found that the photograph was] a "useful, new, harmonious, characteristic, and graceful picture, and that plaintiff made the same . . . entirely from his own original mental conception, to which he gave visible form by posing the said Oscar Wilde in front of the camera, selecting and

1

2

arranging the costume, draperies, and other various accessories in said photograph, arranging the subject so as to present graceful outlines, arranging and disposing the light and shade, [and] suggesting and evoking the desired expression . . . ."

3

4

These findings, we think, show this photograph to be an original work of art, the product of plaintiff's intellectual invention, of which plaintiff is the author . . . .

5

*Id.* at 60.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Thirty-seven years later, Judge Learned Hand suggested the question left open in *Burrow-Giles* -- whether all photographs are sufficiently original by their nature to merit copyright protection -- had been answered in the affirmative by *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239 (1903), which held that chromolithographs that depicted real scenes and people, as photographs do, were copyrightable because they were "the personal reaction of an individual upon nature. Personality always contains something unique. It expresses its singularity even in handwriting, and a very modest grade of art has in it something irreducible, which is one man's alone. That something he may copyright . . . ." *Id.* at 250. In *Jewelers' Circular Publishing Co. v. Keystone Publishing Co.*, 274 F. 932, 934 (S.D.N.Y. 1921), *aff'd*, 281 F. 83 (2d Cir. 1922), Judge Hand said, "*Burrow-Giles [Lithographic] Co. v. Sarony* . . . left open an intimation that some photographs might not be protected . . . . I think that . . . *Bleistein v. Donaldson Lithographing Co.* . . . . rules, because no photograph, however simple, can be unaffected by the personal influence of the author, and no two will be absolutely alike."

20

21

22

23

24

25

26

Professor Nimmer's treatise reports that Judge Hand's statement of the law "has become the prevailing view, so that [almost] any . . . photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken." 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 2.08[E][1], at 2 - 126.3 (1992 ed.) (footnote omitted)[1].

27

28

---

[1] The exceptions Nimmer would recognize do not apply in this case. See *Id*. at 2 - 126.3-2 - 126.7 (suggesting a photograph of a copyrighted photograph would not be copyrightable, nor would a

Cases after *Burrow-Giles* and *Bleistein* confirmed that a photograph of an object is copyrightable. *See, e.g.*, *Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir. 1992) (photograph of puppies); *Eastern America Trio*, 97 F. Supp. 2d at 417 (photographs of "common industrial items" including electrical products); *Pagano v. Chas. Beseler Co.*, 234 F. 963, 964 (S.D.N.Y. 1916) (photograph of a scene including the New York Public Library). Indeed, the Ninth Circuit endorses the liberal view that "even the slightest artistic touch will meet the originality test for a photograph." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000); *see also Bleistein*, 188 U.S. at 250  ("The least pretentious picture has more originality in it than directories and the like, which may be copyrighted.").

In this case, Adlife's food images clearly meet the very low bar of originality such that they are subject to copyright. Adlife's food images are artistically arranged and rendered using pleasing angles, selective lighting, color correction and color separation, all of which requires a high degree of creativity. Complaint ¶ 14; *see also Burrow-Giles Lithographic Co.,* 111 U.S. 53. The originality and creativity embodied in Adlife's images is readily apparent upon visual inspection. *See* Complaint, Exhibit D-E.

Because Adlife's food images are sufficiently creative and original to be subject to copyright protection, it is implausible for Jetro to allege that Adlife's food images are invalid because they are "non-original" or depict "generic images of indistinctive, commonplace items."

To conclude, Jetro's First Counterclaim for Copyright Invalidity must be dismissed for failure to state a claim.

### 2. Jetro's Counterclaim For Copyright Non-Infringement Should Be Dismissed Because It Is Merely A Mirror Image Of Adlife's Claim.

For its Second Counterclaim, Jetro alleges as its sole basis that it has "not infringed any of the many asserted copyrights, including because [Jetro's] conduct

---

photograph that duplicated exactly every single element of a copyrighted photograph).

was authorized, licensed, and/or qualifies as fair use." Counterclaim ¶ 15. Once again, Jetro's claim must fail because it relies solely on conclusory barebones allegations that lack any discernable factual basis, and because its use of "and/or" make it impossible for Adlife to precisely identify the theory upon which Jetro's claim rests.

Under 28 U.S.C. § 2201(a), a district court may grant a declaratory judgment only "[in] a case of actual controversy within its jurisdiction." *Ibid.* "A counterclaim seeking a declaration of non-infringement [of a copyright] is viable only when it presents an independent case or controversy that would survive a dismissal of the plaintiff's infringement claim." *Maverick Recording Co. v. Chowdhury*, 2008 WL 3884350, at *2 (E.D.N.Y. Aug 19, 2008).  "The central issue in these cases is whether the defendants committed copyright infringement, and the defendants' counterclaim seeking a declaratory judgment that they did not is duplicative and entirely redundant." *Maverick Recording Co.*, 2008 U.S. Dist. LEXIS 63783, 2008 WL 3884350, at *2.

Jetro's declaratory judgment counterclaim seeking a declaration of non-infringement is the mirror image of Adlife's infringement claim, precisely. Jetro has made absolutely no showing that its counterclaim represents an independent case or controversy that would survive resolution of Adlife's infringement claim one way or the other. In any event, though a court "must take all of the factual allegations in the [counterclaim] as true, it is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted).

Jetro asserts no facts to show that it has not in fact infringed on Adlife copyright or that its conduct "was authorized, licensed, and/or qualifies as fair use." Counterclaim ¶ 14. Quite the contrary, Jetro admits that it canceled its subscription to use Adlife's food image library in September of 2018. Complaint ¶ 38; Answer ¶ 38. As a result, Jetro's Second Counterclaim for Copyright Non-Infringement must

be dismissed for failure to plausibly state a claim.

### 3. Jetro's Counterclaim For Breach Of Contract Should Be Dismissed For Failure To State A Claim.

For its Third Counterclaim, Jetro alleges that Adlife breached the license agreement executed by the parties.

In essence, Jetro's Counterclaim for Breach of Contract alleges that when entering in to the contract, Jetro "reasonably believed" that the parties' obligations "included the duty to limit the extent of any harm or damages claimed from any asserted infringing and/or unauthorized uses following the expiration of the Agreement" and that "Adlife's failure to promptly inform [Jetro] of Adlife's discovery of asserted infringing and/or unauthorized uses following the expiration of the Agreement caused harm to and damaged [Jetro]" and that Adlife breached "its obligation to promptly inform [Jetro] of any infringing and/or unauthorized uses, and mitigate harm and/or damages. *See* Counterclaim ¶¶19-28.

On or about March 13, 2017, Adlife and Jetro entered into a license agreement allowing Jetro to access and use Adlife's images. Complaint ¶ 29, Exhibit B; Answer ¶ 29. Jetro subsequently cancelled its subscription and Jetro's license to use Adlife's images expired on March 1, 2019. Complaint ¶¶38-40. The express terms of the license agreement made no mention of any obligation by Adlife to inform Jetro of alleged unauthorized use prior to filing a lawsuit. *See* Complaint, Exhibit C. The license agreement, which is to be interpreted according to the laws of Rhode Island, contains an integration clause stating that it "constitutes the entire agreement between the Parties as to the subject matter." Complaint, Exhibit B ¶ 9(d).

One month later, in April 2019, Adlife discovered that Jetro had continued to use Adlife's food images despite agreeing in the license agreement that any further usage of the Adlife's food images outside the license term would be considered unauthorized. Complaint ¶¶32, 42. One month after discovering Jetro's unauthorized use of Adlife's food images, in May 2019, Adlife filed the instant

lawsuit. *See* Dkt. #1.

Notably absent from any of the allegations in Jetro's Third Counterclaim is any citation to the written agreement between the parties evidencing that Adlife had the contractual obligation to inform Jetro that Adlife has discovered alleged unauthorized use of its food images, which Jetro alleges as the sole basis for its claim of breach. This is because nowhere in the express terms of the license agreement is Adlife obliged to inform Jetro of discovery of unauthorized use of Adlife's food images or to mitigate its damages. *See* Complaint, Exhibit B. Instead, Jetro relies on its supposed "reasonable belief" that these terms are part of the parties' agreement.

As the Rhode Island Supreme Court observed,

> [W]hen parties to a contract have adopted a written agreement as the final expression of their intention in regard to a portion of or the entire subject matter of the transaction, all other expressions of intention that have occurred prior to or contemporaneous with the making of the agreement are immaterial in ascertaining the terms of the transaction.

*Fram Corp. v. Davis*, 121 R.I. 583, 587-88, 401 A.2d 1269, 1272 (1979); *see also Perrotta v. Paine*, 1994 R.I. Super. LEXIS 54, at *5 (Super. Ct. May 17, 1994)(Where a contract constitutes a fully integrated instrument, extrinsic evidence should not be considered and the express terms and conditions set forth in the contract prevails.).

Jetro's Third Counterclaim for Breach of Contract must fail because the express integration clause contained in the parties' license agreement precludes Jetro from relying on terms that it "reasonably believed" were part of the license agreement but are not expressly present in its written terms. Even if Jetro reasonably believed that the notice and mitigation terms alleged in its Counterclaim are part of the license agreement, Jetro's tacit admission that no *express* terms in the license agreement state as such is fatal because the license agreement contains an integration clause which precludes the unwritten terms from the contract. *See* Complaint, Exhibit B ¶ 9(d).

Even if Adlife was contractually obliged to mitigate its damages and give Jetro notice of the unauthorized use of Adlife's food images, Jetro's claim must still fail. Jetro alleges that Adlife did not provide notice, but Jetro completely ignores the fact that it was placed on *actual* notice of its conduct only one month after Adlife discovered the unauthorized use of its food images when Adlife filed the Complaint in May 2019 and served it shortly thereafter. *See* Complaint ¶ 42 (infringements discovered in April 2019). While Jetro may disagree with Adlife's decision to file suit rather than reach out to Jetro in some other manner, nothing in Jetro's allegations or in the license agreement between the parties suggests that Adlife was precluded from filing a lawsuit to effectuate notice of its claims.

Furthermore, even assuming Adlife had a duty to mitigate, Jetro cannot plausibly claim that Adlife failed to mitigate its damages. Jetro does not specifically allege in its Counterclaim how it believes Adlife failed to mitigate its damages. Nonetheless, the facts do not suggest that Adlife unreasonable failed to mitigate its damages. Adlife could have sat idly by for years and waited to assert its claims until near the end of the statute of limitations period in order for maximum damages to accrue. However, shortly after discovering its claims and briefly investigating, Adlife chose to swiftly file suit. Such diligence by Adlife mitigated any potential additional damages by placing Jetro on actual notice of Adlife's claims of unauthorized use shortly after they were uncovered thereby giving Jetro the opportunity to quickly cease its unauthorized conduct.

Therefore, Jetro's Third Counterclaim for Breach of Contract must be dismissed for failure to plausibly state a claim.

### 4. Jetro's Counterclaim For Breach of The Implied Covenant Of Good Faith And Fair Dealing Should Be Dismissed.

For its Fourth Counterclaim, Jetro alleges that Adlife breached the implied covenant of good faith and fair dealing present in the license agreement

> by failing to exercise its discretion in favor of informing Counterclaimants as immediately as possible of any infringing and/or unauthorized uses, in order to mitigate harm and/or damages.

---

**MOTION TO DISMISS**

12

Counterclaim ¶31.

It is well established in Rhode Island that "virtually every contract contains an implied covenant of good faith and fair dealing between the parties." *Dovenmuehle Mortgage, Inc. v. Antonelli*, 790 A.2d 1113, 1115 (R.I. 2002) (quoting *Centerville Builders, Inc. v. Wynne*, 683 A.2d 1340, 1342 (R.I. 1996)). This implied covenant exists between the parties to a contract so that the contractual objectives may be achieved. *Ide Farm & Stable, Inc. v. Cardi*, 110 R.I. 735, 739, 297 A.2d 643, 645 (1972) (citing *Psaty & Fuhrman v. Housing Auth.*, 76 R.I. 87, 68 A.2d 32 (1949)); *see also Rhode Island Charities Trust v. Engelhard Corp.*, 109 F. Supp. 2d 66, 73 (D.R.I. 2000) (holding that the implied covenant of good faith and fair dealing imposes a limitation upon one party adversely impacting the contract's value to the other party). The applicable standard in determining whether the implied covenant of good faith and fair dealing has been breached is "whether or not the actions in question are free from arbitrary or unreasonable conduct." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 66 F. Supp. 2d 317, 329 (D.R.I. 1999); *see Reid v. Key Bank of S. Maine, Inc.*, 821 F.2d 9, 14 (1st Cir. 1987) (holding that good faith, under a subjective standard, is defined as "honesty in fact"); *see also*, U.C.C. § 1-201(b)(20) ("Good faith," except as otherwise provided in Article 5, means honesty in fact and the observance of reasonable commercial standards of fair dealing). While every breach of the implied covenant may give rise to a breach of contract claim, not every breach of contract is necessarily a breach of the implied covenant of good faith and fair dealing. *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 66 F. Supp. 2d 317, 330 (D.R.I. 1999) This is because the implied covenant of good faith and fair dealing is a counterpromise implied in every contract that the promisee will act in a manner consistent with the purposes of the contract. *Ibid*, citing 17A Am. Jur. 2d Contracts § 380 (1991).

Here, similar to the argument advanced in section III.3, *supra*, nothing in

Adlife's conduct suggests that it did not act reasonably and in good faith or that it acted in any manner inconsistent with its obligation in parties' license agreement. Simply put, Adlife believed that Jetro engaged in unauthorized use of Adlife's intellectual property in violation of the parties' license agreement and, having concluded that a breach likely did occur, Adlife elected to protect its rights by filing a lawsuit only one month after discovering and verifying its claim. As explained above, the license agreement contains no express provision obligating Adlife to give notice to Jetro prior to filing suit. Adlife's conduct is neither arbitrary unreasonable, or in bad faith. Adlife simply believed it had a legitimate legal claim against Jetro and acted accordingly to protect its rights.

Nor did Adlife's conduct in any way frustrate Jetro from receiving the full benefit of its bargain from the license agreement. Jetro does not assert that Adlife acted unreasonably or in bad faith during the term of the license. Rather, all of the allegations contained in Jetro's counterclaims occurred after Jetro had cancelled its subscription to use Adlife's food images. During the time period that Jetro was authorized to use Adlife food images, Jetro received the full benefit of its bargain as set forth in the license agreement, i.e. full access and use of Adlife's food image database for the agreed upon price.

Jetro's Fourth Counterclaim concerns the time period of Jetro's unauthorized use of Adlife's food images, which occurred outside of the bargained time period of authorized use set forth in the license agreement. That Jetro may be forced to pay substantial monetary damages for acting in violation of the parties' license agreement does not mean that Jetro did not receive the full benefit of its bargain during the time period its subscription was valid. Had Jetro ceased use of Adlife's food images upon expiration of the term of the license agreement, as it was contractually obligated to do, Adlife would have had no claim for monetary damages against Jetro. Because Adlife's claims concerns conduct by Jetro expressly prohibits by the parties' license agreement Jetro cannot complaint that it was

deprived of the benefit of its bargain as a result of acting outside the bounds of the bargained for agreement. That Adlife decided to seek a legal remedy in response Jetro's unauthorized conduct does not give rise to a breach by Adlife of its covenant of good faith and fair dealing.

Therefore, Jetro's Fourth Counterclaim for Breach of Implied Covenant of Good Faith and Fair Dealing must be dismissed for failure to plausibly state a claim.

### 5.   Jetro's Counterclaim For Fraud Should Be Dismissed Because It Fails To Meet The Heightened Rule 9 Pleading Standard.

For its Fifth Counterclaim for Fraud, Jetro alleges that Adlife misrepresented to Jetro, "by omission and failure to disclose, important facts concerning Adlife's discovery of asserted infringing and/or unauthorized uses following the expiration of the Agreement," that "Adlife's misrepresentations were false, and Adlife knew they were false when Adlife failed to inform [Jetro] of the material facts concerning Adlife's discovery of asserted infringing and/or unauthorized uses," and that Adlife intended for Jetro "to rely upon its misrepresentations, and they did." *See* Counterclaim ¶¶35-39. Jetro's barebones and conclusory allegations do not meet the heightened pleading standard for fraud set forth in Rule 9.

Rule 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction." *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.),* 42 F.3d 1541, 1548 (9th Cir.1994). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548

(9th Cir.1994)). This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Here, Jetro's Counterclaim for Fraud does not meet the heightened pleading standard of Rule 9 because the allegations do not state with the requisite particularity the circumstances constituting the alleged fraud. Jetro cryptically alleges that Adlife failed to disclose "important facts" concerning its discovery of Jetro's unauthorized use of Adlife's food images after the term of the license agreement had expired, but does not specify what facts were misrepresented. *See* Counterclaim ¶35. Nor does Jetro allege when or how Adlife's alleged omissions were supposed to be disclosed to Jetro, why Adlife was obligated to disclose them to Jetro in the first place, or why any alleged purposeful omission would rise to the level of being fraudulent as opposed to negligent or some lesser standard.

Indeed, Jetro's counterclaim for fraud does not allege that the parties had any contact at all after September 2018 when Jetro cancelled its subscription. *See* Complaint ¶¶37-38; Answer ¶¶37-38. This is critical because Jetro does not and cannot allege with specificity a circumstance in which Adlife was in a position to make the alleged fraudulent omission in the first place.

Therefore, Jetro's Fifth Counterclaim for Fraud must be dismissed for failure to plausibly state a claim under the heightened Rule 9 pleading standard.

**6.    Jetro's Counterclaim For Unfair Competition Should Be Dismissed For Failure To Meet The Rule 9 Pleading Standard.**

For its final Counterclaim, Jetro alleges a claim common law Unfair Competition which sounds in fraud:

> 41    .As set forth above, Adlife engaged in the unfair withholding of material information concerning its discovery of asserted infringing and/or unauthorized uses following the expiration of the Agreement.
> 42.    Adlife's actions constitute unlawful, unfair, malicious and/or fraudulent practices. As a result of Adlife's actions, Counterclaimants have

been injured and lost money in an amount to be determined at trial. Counterclaim ¶¶41-42.

Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state law claims brought in federal court. *Vess*, 317 F.3d at 1103. If a cause of action "sounds in fraud" it is subject to the Rule 9 pleading standard even if fraud is not an express element of the claim. *See Sparling v. Daou*, 411 F.3d 1006, 1027 (9th Cir. 2005).

Jetro's pleading expressly concedes that its Sixth Counterclaim for Unfair Competition arises out of Adlife's allegedly fraudulent practices. It is therefore subject to the heightened pleading requirement of Rule 9. Similar to the argument advanced in section III.6, *supra*, Jetro does allege with requisite specificity the facts surrounding the who, what, where, when, or why of Adlife's alleged fraudulent activity.

Therefore, Jetro's Sixth Counterclaim for Unfair Competition must be dismissed for failure to plausibly state a claim under the heightened Rule 9 pleading standard.

## IV.    CONCLUSION

Plaintiff Adlife respectfully requests that all six of Jetro's Counterclaims be dismissed for failure to state a claim.


DATED: October 7, 2019                    Respectfully submitted,


                                          **/s/ Ryan E. Carreon**
                                          Ryan E. Carreon, Esq.
                                          Cal. Bar No. 311668
                                          **HIGBEE & ASSOCIATES**
                                          1504 Brookhollow Dr., Ste 112
                                          Santa Ana, CA 92705-5418
                                          (714) 617-8336
                                          (714) 597-6559 facsimile
                                          *Counsel for Plaintiff*

**PROOF OF SERVICE**

I, the undersigned, say:

I am a citizen of the United States and I am a member of the Bar of this Court. I am over the age of 18 and not a party to the within action My business address is 1504 Brookhollow Dr., Ste 112, Santa Ana, California, 92705.

On October 15, 2019, I caused to be served the foregoing documents:

**NOTICE OF MOTION AND MOTION TO DISMISS THE COUNTERCLAIMS; DECLARATION OF RYAN E. CARREON; PROPOSED ORDER**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California using the CM/ECF system which will send notice of such filing to the following registered CM/ECF users:

**Stephen M. Lobbin**
sml@smlavvocati.com

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on October 15, 2019, at Santa Ana, California.

*/s/ Ryan E. Carreon*
Ryan E. Carreon, Esq.
*Counsel for Plaintiff*