Justin A. Bubion, Esq. State Bar No. 240312
jbubion@tlsslaw.com
TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
626 Wilshire Boulevard, Suite 800
Los Angeles, California 90017
Telephone: (213) 624-4500
Facsimile: (213) 624-0820

Attorney for Defendants/Counterclaimants,
JETRO CASH & CARRY ENTERPRISES, LLC,
JETRO HOLDINGS, LLC and
RESTAURANT DEPOT, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

ADLIFE MARKETING & COMMUNICATIONS CO., INC.,

Plaintiff,

v.

JETRO CASH & CARRY ENTERPRISES, LLC, JETRO HOLDINGS, LLC, AND RESTAURANT DEPOT, LLC,

Defendants.

Case No. 8:19-cv-01053-JLS-JDE

Hon. Josephine L. Staton

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**

**Courtroom: 10A – 10th Floor**

**Hearing Time: 10:30 a.m.**

**Hearing Date: Feb 21, 2020**

Complaint Filed: May 30, 2019

# TABLE OF CONTENTS


I. INTRODUCTION ........................................ 1

II. MOTION STANDARD ........................................ 1

III. DEFENDANTS' COUNTERCLAIM SHOULD NOT BE DISMISSED AS IT IS WELL-PLED AND WITH MERIT ........................................ 2

1. Plaintiff Violated Defendants' Reasonable Expectations ........................................ 3

2. Plaintiff Did Not Act in Good Faith ........................................ 7

IV. DEFENDANTS SHOULD BE GRANTED LEAVE TO AMEND THEIR PLEADINGS SHOULD PLAINTIFF'S MOTION BE GRANTED ........................................ 8

V. CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

**Cases**


*Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 473, 583 N.E.2d 806 (1991) .......... 2, 7

*Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 822 N.E.2d 667 (2005) .......... 3

*Bay Colony R.R. Corp. v. Town of Yarmouth*, 470 Mass. 515, 23 N.E.3d 908 (2015) .......... 7

*Bodine v. Graco, Inc.*, 533 F.3d 1145, 1148 (9th Cir. 2008) .......... 1

*Cadle Co. v. Vargas*, 55 Mass.App.Ct. 361, 366, 771 N.E.2d 179 (2002) .......... 3, 6

*Centerville Builders, Inc. v. Wynne*, 683 A.2d 1340, 1342 (R.I. 1996) .......... 2

*Chokel v. Genzyme Corp.*, 449 Mass. 272, 276, 867 N.E.2d 325 (2007) .......... 2

*Chokel v. Genzyme Corp.*, 65 Mass.App.Ct. 1122 (2006) .......... 3

*Conley v. Gibson*, 355 U.S. 41 (1957) .......... 2

*Doe v. United States Cook*, 58 F.3d 494, 497 (9th Cir. 1995) .......... 9

*Dovenmuehle Mortgage, Inc. v. Antonelli*, 790 A.2d 1113, 1115 (R.I. 2002) .......... 2

*Fortune v. National Cash Register Co.*, 373 Mass. 96, 101, 105, 364 N.E.2d 1251 (1977) .......... 2

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) .......... 1

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) .......... 9

*Marx v. Globe Newspaper Co., Inc.*, 13 Mass. L. Rep. 190, 10-11 (Mass.Super.2001) .......... 2

*Reiter v. Cooper*, 507 U.S. 258 (1993) .......... 1

*Robert & Ardis James Foundation v. Meyers*, 474 Mass. 181, 191, 48 N.E.3d 442, 451 (2016) .......... 7

*Southern Const. Co. v. Pickard*, 371 U.S. 57 (1962) .......... 1

*Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. 2007) .......... 1

*T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 570, 924 N.E.2d 696 (2010) .......... 3

*Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 82, 12 N.E.3d 354 (2014) .......... 2, 3

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 1, 2, 8

Fed. R. Civ. P. 13 .......... 1

Fed. R. Civ. P. 15(a)(2) .......... 1

Fed. R. Civ. P. 8(a)(2) and (3) .......... 1

**Treatises**

E.A. Farnsworth,, Contracts §7.17(a), at 329 (1990) .......... 7

Restatement (Second) of Contracts §205 (1979) .......... 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants-Counterclaimants Jetro Cash & Carry enterprises, LLC, Jetro Holdings, LLC, and Restaurant Depot, LLC (collectively referred hereinafter as "Defendants") submit this opposition to Plaintiff's Motion to Dismiss, filed pursuant to Fed. R. Civ. P. 12(b)(6), which seeks to dismiss Defendants' counterclaim.

Defendants' counterclaim for breach of the implied covenant of good faith and fair dealing, made pursuant to Fed. R. Civ. P. 15(a)(2), sufficiently asserts a legal theory entitling them to relief, which is sufficiently supported by facts that achieve and surpass the necessary standard of plausibility. Plaintiff's motion must thus be denied.

## II. MOTION STANDARD

A party is required to state certain counterclaims where those claims arise out of same transaction or occurrence that is the subject matter of the opposing party's claim. *See* Fed. R. Civ. P. 13; *see also Southern Const. Co. v. Pickard*, 371 U.S. 57 (1962) (outlining basic requirements for compulsory counterclaims, including the inability to assert them later in the underlying action); *Reiter v. Cooper*, 507 U.S. 258 (1993) (differentiating between counterclaims and defenses, and stating that counterclaims often must be asserted within certain timeframes).

Dismissal of a pleadings under Federal Rule of Civil Procedure 12(b)(6) is merited only where "it is clear from the complaint 'that no relief could be granted under any set of the facts that could be proved consistent with the allegations.'" *Bodine v. Graco, Inc.*, 533 F.3d 1145, 1148 (9th Cir. 2008) (*quoting Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. 2007); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). A pleading stating a claim for relief must, to be sufficient, contain "a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought." Fed. R. Civ. P. 8(a)(2) and (3). The

statement of the claim need not delineate, in detail, all the facts upon which a claim rests, as its purpose is to provide fair notice to opposing parties what the … claim is and grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41 (1957); *but see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.") [internal citations omitted].

Defendants' remaining counterclaim is well-pleaded and meritorious, and invulnerable to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## III. DEFENDANTS' COUNTERCLAIM SHOULD NOT BE DISMISSED AS IT IS WELL-PLED AND WITH MERIT

"Virtually every contract contains an implied covenant of good faith and fair dealing between the parties." *Dovenmuehle Mortgage, Inc. v. Antonelli*, 790 A.2d 1113, 1115 (R.I. 2002) [internal brackets omitted] (*quoting Centerville Builders, Inc. v. Wynne*, 683 A.2d 1340, 1342 (R.I. 1996)).[1] Because the implied covenant is designed to ensure the contractual objectives are received, a party may breach the covenant of good faith and fair dealing, implicit in every contract, without breaching the express terms of that contract. *See Marx v. Globe Newspaper Co., Inc.*, 13 Mass. L. Rep. 190, 10-11 (Mass.Super.2001); *see also Fortune v. National Cash Register Co.*, 373 Mass. 96, 101, 105, 364 N.E.2d 1251 (1977). The covenant still operates even when the contract in question is executed between "sophisticated business people." *See Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 82, 12 N.E.3d 354 (2014) (*citing Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 473, 583 N.E.2d 806 (1991)).

The covenant is breached "when one party violates the *reasonable expectations of the other*." *Chokel v. Genzyme Corp.*, 449 Mass. 272, 276, 867

---

[1] Pursuant to the End-User Subscription Agreement ("Agreement") executed between the parties on or about March 13, 2017, the Agreement was to be "construed in accordance with, and governed by, the laws of the State of Rhode Island." See Dkt. No. 1-2 at §9(a).

N.E.2d 325 (2007) [emphasis added] (*citing Cadle Co. v. Vargas*, 55 Mass.App.Ct. 361, 366, 771 N.E.2d 179 (2002)); *see also* RESTATEMENT (SECOND) OF CONTRACTS §205 (1979). To determine whether the covenant has been breached, courts look to the manner of performance of the allegedly breaching party. *See Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 822 N.E.2d 667 (2005). For example, a party may breach the implied covenant "for manipulating contract rights as a means to extract more money… or to gain some other unfair advantage beyond what the parties originally bargained for or reasonably expected. Engaging in opportunistic timing, taking deliberate advantage of contractual language to profit from changes in circumstances, may lay waste to those reasonable expectations; thus conduct that conforms to the letter of the parties' agreement may still run afoul of its spirit." *Chokel v. Genzyme Corp.*, 65 Mass. App. Ct. 1122 (2006). "There is no requirement that bad faith be shown; instead, the [claimant] has the burden of proving a lack of good faith… [which] can be inferred from the totality of the circumstances." *Weiler*, *supra*, at 82, 12 N.E.3d 354 (*quoting T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 570, 924 N.E.2d 696 (2010)).

Taking Defendants' well-pleaded factual allegations as true, as is necessary on a motion to dismiss, provable facts exist that would entitle Defendants to relief on their counterclaim.

**1. Plaintiff Violated Defendants' Reasonable Expectations**

Defendants have adequately pleaded in their counterclaim that Plaintiff acted in such a manner that was contrary to Defendants' reasonable expectations, which are based on industry standards, Plaintiff's past habits, and the terms of the End-User Subscription Agreement ("Agreement").

Defendants allege that they reasonably expected to receive notice from Plaintiff of any suspected and unintentional infringement in accordance with industry standards. *See* Defendants' Second Amended Answer and Counterclaim

["SAC"] at ¶23. Defendants allege a prevailing industry standard in instances of suspected copyright infringement of stock photography wherein the copyright holder will attempt, for example, with a "cease and desist" letter, to notify the infringing party and remedy the infringement. *See* SAC at ¶23. While there are exceptions to this practice, for instance, where the infringement is willful or alerting the infringer may result in invasive action [*see* SAC at ¶24], whether a party acted in accordance with industry standards is generally not determined on the applicability of law, but facts, and a matter for expert review. *See, e.g., Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) (expert testimony as to whether party acted within industry standards admissible when based on facts of action, not legal conclusions) (*citing Ford v. Allied Mut. Ins. Co.*, 72 F.3d 836, 841 (10th Cir. 1996) (expert testimony admissible where expert concluded industry standards supported finding opposing party acted in bad faith)).

Plaintiff incorrectly asserts that it has no duty under controlling law to alert an allegedly infringing party prior to commencing a litigation action. In support of this position, it cites two cases, *Interscope Records v. Time Warner, Inc.* and *Petrella v. Metro-Goldwyn-Mayer, Inc.* In *Interscope Records*, the Court, citing to a Ninth Circuit decision, did not deal with the issue of notice as an industry standard or in relation to a claim of breach of the implied covenant; instead, the Court found that the lack of notice requirement contained within the Copyright Act was relevant in determining the merits of an affirmative defense for failure to mitigate damages, specifically whether a copyright holder could sue on subsequent infringements even where they had failed to sue on earlier infringements. *See Interscope Records v. Time Warner, Inc.*, 2010 WL 11505708, at *15 (C.D. Cal. June 28, 2010). The Court went on to cite an opinion from New York, determining that a notice requirement would "hinder[] a copyright owner['s] ability to detect a pattern of ongoing infringement, which is a prerequisite to obtaining injunctive relief *and enhanced*

*statutory damages for willfulness*." *See id.* (*citing American Society of Composers, Authors, and Publishers by Bergman v. Pataki*, 930 F. Supp., 873, 879 (S.D.N.Y. 1996)) [emphasis added]. This situation is almost identical to the identified limited exceptions contained within Defendants' counterclaims: that notice, as an industry standard, is regular custom and practice *except* in instances concerning "clearly willful infringement or where alerting the infringer may result in evasive action." SAC at ¶24. The Court's decision in *Interscope* did not discount the potential relevance of a copyright holder's delay in support of other defenses: "to the contrary, it may preclude liability altogether for certain infringements", for example where laches or statute of limitations defenses are raised. *Id.* at *16.

Plaintiff's second cited case, *Petrella v. Metro-Goldwyn-Mayer, Inc.*, is similarly unsupportive of Plaintiff's argument. In fact, the passage that plaintiff quotes, when taken in context, further supports Defendants' contention that plaintiff's delay in filing the instant action was contrary to Defendants' reasonable expectations. In *Petrella*, the Supreme Court, dealing with asserted defenses of laches and statutes of limitation, like the *Interscope* Court, reasoned that a plaintiff need not file an action immediately, but take time, while considering statutory limitations, to determine whether "an infringer's exploitation undercuts the value of the copyrighted work, has no effect on the original work, or even complements it." 572 U.S. 663, 682 (2014). This holding speaks not at all to the instant issue as to whether, in accordance with industry standards, Plaintiff was required to give Defendants notice prior to suit, but rather how long a copyright holder could wait before determining if it was economically beneficial to bring an action.[2]

In sum, neither case plaintiff cites deals with the issue of notice as an industry standard in relation to a claim for breach of the implied covenant. While the

---

[2] Given Plaintiff's attempted enforcement of the liquidated damages clause, alleging that for each instance of alleged infringement that it is entitled to $8,000, Plaintiff arguably did not need to wait *two months* for the accrual of 64 uses of its images.

Copyright Act does not contain a notice requirement, the law clearly holds that, when a party's reasonable expectation that they will receive notice of a violation of contractual responsibility is broken, a claim for breach of the implied covenant and good faith may exist. *See, e.g.*, *Cadle Co.*, *supra*, at 366. Perhaps Plaintiff overlooked the case quoted by the Court in *Interscope* and dissent in *Petrella*, which is far more appropriate to the instant matter. In an opinion from 1916, Judge Learned Hand wrote: "It must be obvious to everyone familiar with equitable principles that it is inequitable for the owner of a copyright, with full notice of an intended infringement, to stand inactive while the proposed infringer spends large sums of money in its exploration, and to intervene only when his speculation proved a success." *Haas v. Leo Feist, Inc.*, 234 F. 105, 108 (S.D.N.Y. 1916)

In support of their counterclaim, Defendants offer facts that Plaintiff previously and habitually would send "cease and desist" letters to suspected copyright infringers prior to filing suit in court to allow the alleged infringer a reasonable opportunity to remove any unauthorized content prior to litigation. *See* SAC at ¶18. In support of this allegation, Defendants cite to a specific example of when Plaintiff sent such a letter in lieu of commencing a litigation action. *See* SAC at ¶19. Defendants thus reasonably believed that Plaintiff would send notice to them of any alleged infringements.

Defendants' belief was solidified by the terms of the Agreement executed between the parties outlining the rights and responsibilities of each. The Agreement contemplates that Plaintiff "will make commercially reasonable efforts to notify Subscribers" of amendments to Plaintiff's website and services, and that Plaintiff may send "any demand [or] notice… required or permitted" under the Agreement. *See id.* at ¶¶13-14. Clearly, by Plaintiff's own admissions, it had the resources to conduct an "audit" of instances of suspected infringement. *See* Complaint at ¶43; *see also* Declaration of Ryan Carreon dated December 5, 2019 ["Carreon Decl."] at

¶4. Defendants reasonably expected that, in accordance with the terms of the Agreement by which Plaintiff would "make commercially reasonable efforts to notify" Defendants of suspected infringement, information which was exclusively in Plaintiff's possession. *See* SAC at ¶22.

Defendants had a reasonable expectation, based on the terms of the Agreement and Plaintiff's previous actions in similar instances, that Plaintiff would operate in good faith to mitigate its damages in a timely manner. Plaintiff's failure to act in accordance with those reasonable expectations amounts to a breach of the implied covenant of good faith and fair dealing.

**2. Plaintiff Did Not Act in Good Faith**

Parties have a duty to "cooperate in effectuating the existing, agreed-upon" contract, and act in good faith to allow the terms of the contract to be fulfilled. *See, e.g., Robert & Ardis James Foundation v. Meyers*, 474 Mass. 181, 191, 48 N.E.3d 442, 451 (2016) (finding breach of implied covenant where plaintiff took "extreme and unwarranted view of his rights under the contract" in violation of defendant's reasonable expectations); *Bay Colony R.R. Corp. v. Town of Yarmouth*, 470 Mass. 515, 23 N.E.3d 908 (2015) (town owed duty under implied covenant to engage in reasonable accommodations to railroad company's attempts to perform its obligations under the contract in accordance with latter's reasonable expectations); *see also Anthony's Pier Four, Inc*, *supra*, at 473 (plaintiff acted in bad faith when he attempted to force financial concessions from defendant by using "discretionary right[s] under the agreements as a pretext"); E.A. FARNSWORTH, CONTRACTS §7.17(a), at 329 (1990) ("It is, therefore, bad faith to use discretion to recapture opportunities foregone on contracting as determined by the other parties' reasonable expectations") [internal quotations omitted].

Defendants contend that the timeframe between Plaintiff's discovery of the alleged copyright infringement and the commencement of the instant action, April

2019 and May 30, 2019, respectively, and the lack of action in the interim by Plaintiff, is evidence of a lack of good faith. Defendants allege that during Adlife's compilation of "64 of its Copyrighted Food Photographs appearing in Jetro circulars dated after the term of the License Agreement had expired for a total of 464 separate uses in both print and online media," and "18 copyrighted Food Photos used in Jetro Cash & Carry branded store circulars and 49 Copyrighted Food Photos used in Restaurant Depo branded store circulars, with 3 of the Copyrighted Food Photos being used in both Jetro and Restaurant Depo circulars," Plaintiff never notified or alerted Defendants of the infringement, instead allowing the infringements to continue to accrue. *See* SAC at ¶¶8-9. Instead, Plaintiff waited for approximately two months, during which time it conducted a full-blown investigation by combing through Defendants' circulars to identify each and every instance of alleged infringement. This, Defendants contend, amounts to lying in wait to capitalize on the unconscionable liquidated damages clause contained in the Agreement. By failing to exercise discretionary rights and obligations contained within the Agreement, Plaintiff attempted to capitalize on that damages clause in an effort to secure a better financial outcome which was not originally bargained for in the contract negotiations.

Plaintiff's deliberate failure to notify Defendants of their inadvertent suspected infringements so as to allow its damages to accrue, thus harming Defendants, prevented Defendants from remedying the suspected infringements and, in turn, mitigating its own damages. This failure to act in good faith and without malice violated the implied covenant of good faith.

## IV. DEFENDANTS SHOULD BE GRANTED LEAVE TO AMEND THEIR PLEADINGS SHOULD PLAINTIFF'S MOTION BE GRANTED

Where it is determined a pleadings fails to allege claims as required pursuant to Rule 8, and a motion to dismiss pursuant to Rule 12(b)(6) is granted, the party

whose pleadings are deficient should be given leave freely to amend to cure any defects, absent a finding that the pleading could not possibly be cured by the allegation of other facts. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *see also Doe v. U. S. Cook*, 58 F.3d 494, 497 (9th Cir. 1995); *Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242 (9th Cir. 1990).

While Defendants believe their counterclaim is well pleaded, they can allege additional facts to support their counterclaim, if this Honorable Court is inclined to grant the motion. In this regard, when Plaintiff sent an email to Defendants stating that Defendants' subscription had terminated on March 1, 2019, Defendants responded less than two weeks later, requesting Plaintiff's assistance: "To keep in compliance that we avoid using any unauthorized images, can you provide us with a list of images that were downloaded by Restaurant Depot from your Adlife catalogue?"

Via this message, Defendants clearly indicated their reasonable expectation that Plaintiff would collaborate in good faith to avoid unauthorized use. Plaintiff replied, but in a doubly misleading fashion. First, Plaintiff disclaimed the ability to "track downloads by subscriber," which upon information and belief contradicts other statements by Plaintiff. More importantly, Plaintiff politely sought Defendants' "assistance" in determining unlicensed use to "prevent any unnecessary inquiry as to [Defendants' clients'] proof of licensing." The tone and substance of this reply implied an ongoing, collaborative effort and, at minimum, implied that further communications would ensue (in accordance with industry-wide custom) before resort to litigation.

In light of such recently discovered support, if this Court grants Plaintiff's motion, then Defendants respectfully request leave to further amend their counterclaim.

///

## V. CONCLUSION

Defendants have sufficiently pleaded facts supporting its counterclaim against Plaintiff for a breach of the implied covenant of good faith and fair dealing. In totality, Plaintiff's secretive gathering of instances of alleged infringement, coupled with its circumvention of its prior habit of serving "cease and desist" letters and industry standards, is sufficient evidence that Plaintiff acted in bad faith, or at least failed to act in good faith, and contrary to the reasonable expectations of Defendants. As the facts pleaded sufficiently meet, as a threshold matter, Defendants' burden of showing plausible entitlement to relief for a claim, Plaintiff's motion to dismiss must be denied.

Date: January 31, 2020

TRAUB LIEBERMAN STRAUS
& SHREWSBERRY LLP

By: /s/ Justin A. Bubion
Justin A. Bubion
Attorney for Defendants/Counterclaimants
JETRO CASH & CARRY ENTERPRISES, LLC, JETRO HOLDINGS, LLC and RESTAURANT DEPOT, LLC